**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
DOCKET NO. 5:23-cv-14**

| | |
|---|---|
| CORVIAS CONSTRUCTION, LLC,<br>A Delaware Limited Liability Company,<br><br>CORVIAS CONSTRUCTION PARTNERS, LLC,<br>A Delaware Limited Liability Company,<br><br>BRAGG COMMUNITIES, LLC,<br>A Delaware Limited Liability Company,<br><br>           Plaintiffs,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY,<br><br>           Defendant. | **COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

COMES NOW the Plaintiffs, Corvias Construction, LLC ("**CC**"), Corvias Construction Partners, LLC ("**CCP**"), and Bragg Communities, LLC ("**BC**" and collectively with CC and CCP, the "**Plaintiffs**"), by counsel, and for its Complaint for Declaratory Judgment, pursuant to 28 U.S. Code § 2201(a), against Defendant, Steadfast Insurance Company ("**Steadfast**"), states as follows:

<u>**PARTIES**</u>

1.      CC is a Delaware limited liability company with its principal place of business at 301 Metro Center Blvd., Suite 204, Warwick, RI 02886. CC is licensed to transact business in North Carolina.

2.      CCP is a Delaware limited liability company with its principal place of business at 301 Metro Center Blvd., Suite 204, Warwick, RI 02886. CCP is licensed to transact business in North Carolina.

3.      BC is a Delaware limited liability company with its principal place of business at 301 Metro Center Blvd., Suite 204, Warwick, RI 02886. BC is licensed to transact business in North Carolina.

4.      Upon information and belief, Steadfast is an Illinois insurance company with its principal place of business at 1299 Zurich Way, 5th Floor, Schaumburg, IL 60196-1056.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over the matter because the amount in controversy exceeds $75,000.00, and Plaintiffs and Steadfast are citizens of different states. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, this Court has authority to enter a declaratory judgment.

6.      Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because the insured project and risk is located in Cumberland County, North Carolina.

## FACTUAL ALLEGATIONS

7.      BC and Picerne Construction/FBG, LLC ("**PC**") entered into a Standard Form of Agreement dated August 1, 2003, as amended and restated (the "Construction Contract") in order to construct and renovate the privatized military housing projects at Fort Bragg, North Carolina (the "**Project**").

8.      Part of the Project consisted of the construction of five apartment buildings in a development known as Randolph Pointe and designated as Phase 2 (collectively, "**Randolph Pointe Phase 2**").

9.      Randolph Pointe Phase 2 is located on Fort Bragg in Cumberland County, North Carolina.

10. Steadfast issued Subguard Policy Number SGD 9374050-003 (the "**SDI Policy**") to Picerne Military Housing, LLC. A true and accurate copy of the SDI Policy is attached hereto as **Exhibit 1**.

11. SDI Policy Endorsement #5 "Named Insureds Endorsement" names PC as an insured under the SDI Policy.

12. The SDI Policy was obtained for the benefit of BC and to protect the interests of BC.

13. BC is a beneficiary of the SDI Policy.

14. The SDI Policy provided coverage from March 27, 2012 to March 27, 2015 (the "**Policy Period**").

15. SDI Policy Endorsement # 7 allows for enrollment of eligible subcontractors executed during the policy term for the Project.

16. All payments of premium for the SDI Polices have been made.

17. SDI Policy § 1 states: "Subject to the Limits of insurance stated in Item 3. of the Declarations, we will indemnify you for **Loss** after application of the Deductible and Co-payment amounts as stated in Items 4. & 5. of the Declarations and subject to the Retention aggregate stated in Item 6. of the Declarations, but only to the extent of a **Default of performance** by your **Subcontractor/Supplier** as respects any **Covered subcontract or purchase order agreement**."

18. SDI Policy § II(H) states: "**Loss** means the costs and expenses paid by you to the extent caused by a **Default of performance** of a **Subcontractor/Supplier** under the terms of a **Covered Subcontract or purchase order agreement**, less the unpaid **Balance of the subcontract or purchase order agreement price**, including any amounts retained or recovered

by you with respect to the **Covered subcontract or purchase order agreement** of the defaulted **Subcontractor/Supplier**.

Such costs and expenses are:

1. Cost of completing **Subcontractor/Supplier's** obligations under the **Covered subcontract or purchase order agreement**, including amounts the defaulted **Subcontractor/Supplier** is required to pay under the **Covered subcontract or purchase order agreement** to third parties.

2. Cost of correcting defective or nonconforming work or materials.

3. Legal and other professional expenses paid by you and directly related to the **Subcontractor/Supplier Default of performance**.

4. Costs, charges, and expenses paid by you in the investigation, adjustment, and defense of disputes and directly related to a **Subcontractor/Supplier Default of performance**.

5. **Indirect costs.**

Multiple **Defaults of performance** by the same **Subcontractor/Supplier** on one or more **Covered subcontract or purchase order agreements** executed during the **Policy Period** shall eb considered to be a single **Loss**.

**Loss**(es) will be attributed to the **Policy period** in which the **Covered subcontract or purchase order agreement** was executed, not the year(s) in which **Loss**(es) are actually paid by you."

19. SDI Policy § VII states: "We will indemnify you for a **Loss** within thirty (30) days after we receive a **Proof of loss**."

20.     SDI Policy § II(D) states: "**Default of performance** means failure of the **Subcontractor/Supplier** to fulfill the terms of the **Covered subcontract or purchase order agreement** as determined by you or a legally binding authority. A determination by a legally binding authority shall supercede [sic] any previous determination."

21.     SDI Policy § II(L) states: "**Subcontractor/Supplier** means:

1.  Any legal entity which has entered into a **Covered subcontract or purchase order agreement** with the **Insured. Subcontractor/Supplier** shall not include any subsidiary of the **Insured** now existing or hereafter formed or acquired, whether partially or wholly owned or controlled, or any subsidiary of a subsidiary (whether direct or indirect), or partner-ship, joint venture or corporation of the **Insured**.

2.  The receiver, trustee, liquidator, administrator, or similar representative of any **Subcontractor/Supplier** as described in **1**., or its creditors, or the **Subcontractor/Supplier** as described in 1. as debtor in possession under Chapter 11 of the Federal Bankruptcy Code or any similar statute in another country.

3.  Any successor to such legally existing entity, corporation, proprietorship, receiver, trustee, liquidator, administrator, or similar representative referred to in **1**. and **2**.

4.  Any corporation and other entity controlling, con-trolled by, or under common control of such legally existing entity, corporation, proprietorship, receiver, trustee, liquidator, administrator, or similar representative referred to in **1**., **2.**, and **3**."

22.     SDI Policy § II(C) states: "**Covered subcontract or purchase order agreement means** those written binding agreements or other documents executed during the **Policy period** and utilized by you to evidence an agreement between you and your **Subcontractor/Supplier**, as such may be amended from time to time or is otherwise defined by endorsement to this Policy."

23.     On May 24, 2013, Planworx Architecture, P.A. issued the Construction Set Drawings for Randolph Pointe Phase 2 (the "**Construction Set Drawings**").

24.     The Construction Set Drawings state that the 2009 North Carolina State Building Code ("**NCSBC**") would apply to the project.

25.     Johnson Brick Contractors, Inc. ("**Johnson Brick**"), Wendell Siding Company, Inc. ("**Wendell**"), and Zamarripa Brothers Framing, Inc. ("**Zamarripa**") entered into subcontracts with PC during the Policy Period for certain scopes of work in Randolph Pointe Phase 2, described in more detail below.

26.     Construction of Randolph Pointe Phase 2 commenced in 2013 and was completed in December of 2014.

27.     Froehling & Robertson, Inc. ("**F&R**") entered into a contract with BC to perform construction inspection work at the Project, including Randolph Pointe Phase 2.

28.     On December 15, 2014, F&R issued a Certificate of Use and Occupancy for the last of the five apartment buildings constructed in Randolph Pointe Phase 2. Between August 24, 2014 and November 12, 2014, F&R issued Certificates of Use and Occupancy for the other four apartment buildings constructed in Randolph Pointe Phase 2. A true and accurate copy of F&R's Certificates of Use and Occupancy for Randolph Pointe Phase 2 are attached hereto as **Exhibit 2**.

### Johnson Brick Contractors, Inc.

29.     PC (defined as "Contractor") and Johnson Brick (defined as "Subcontractor") executed Master Subcontract Agreement No. MA-JOH-PCFB (the "**Johnson Brick MSA**") for

work to be performed by Johnson Brick on the Project pursuant to Work Orders issued by PC to Johnson Brick. A true and accurate copy of the Johnson Brick MSA is attached hereto as **Exhibit 3**.

30.　　The Johnson Brick MSA § 1.1 states: "The Contract Documents consist of this Agreement, all of its Work Orders (defined below) and Exhibits, any and all addenda issued prior to execution of this Agreement, documents issued in the bid package, change orders issued after execution of this Agreement, the prime general contract between CONTRACTOR and Bragg Communities, LLC (the "Owner") … together with any and all applicable drawings, plans, specifications and addenda. All of the above Contract Documents form this Agreement and are fully incorporated herein. … Unless otherwise defined in an Exhibit, each capitalized term used in an Exhibit shall have the meaning given to such term in this Agreement."

31.　　Johnson Brick MSA § 2.1 states: "CONTRACTOR shall direct SUBCONTRACTOR to perform work through the issuance of written directives called Work Orders in the basic format prescribed in Exhibit A. The Work Orders shall specify the scope of work, Subcontract Time allowed for said work, Subcontract Price, and other requirements as set forth by CONTRACTOR. …"

32.　　Under the Johnson Brick MSA and within the Policy Period, PC and Johnson Brick executed Work Order No. V-17E-04050 (the "**Johnson Brick WO**") that included work on all five buildings in Randolph Pointe Ph 2. A true and accurate copy of the Johnson Brick WO is attached hereto as **Exhibit 4**.

33.　　Johnson Brick WO Part II "Contract Documents" incorporates by reference the Construction Set Drawings.

34.     The Johnson Brick WO generally described Johnson Brick's work as masonry and stone veneer, but more particularly described Johnson Brick's work in the scope of work attached to the Johnson Brick WO.

35.     Johnson Brick's work on the Randolph Pointe Phase 2 portion of the Project failed to meet the requirements of the following (collectively, the "**Johnson Brick Violations**"): (i) NCSBC; (ii) the Construction Set Drawings; (iii) industry standards; and/or (iv) manufacturer's instructions.

36.     The Johnson Brick Violations include, but are not limited to, the following:

a.     Johnson Brick's failure to seal its metal flashing at the transition between the siding and the masonry wall to the masonry rowlock, which violates Construction Set Drawings Sheet A5.11 Detail 3 and Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

b.     Gaps in Johnson Brick's metal flashing at corners, which violates Construction Set Drawings Sheet A5.11 Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

c.     Johnson Brick's pitching of its metal flashing at the transition between the siding and the masonry wall back towards the building, which violates Construction Set Drawings Sheet A5.11 Detail 3, NCSBC § 1403.2, and NCSBC § 1405.3.

d.     Johnson Brick's failure to bend its masonry cap flashing so that the cap flashing sat flush on the pitched masonry rowlock and so as to pitch water away from the building, which violates Construction Set Drawings Sheet A5.11 Detail 3 and Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

e.  Johnson Brick's use of weep tubes, which violates Construction Set Drawings Sheet A4.10 Detail 1 and The Brick Industry Association ("BIA") Technical Note 7.

f.  Johnson Brick's installation of masonry weep holes in a bed of mortar with no drainage plane and filling its masonry weep holes with mortar, which violates NCSBC § 1405.3.2 and BIA Technical Note 7.

g.  Johnson Brick's failure to install brick in all required areas and leaving gaps in the masonry, which violates BIA Technical Note 7.

h.  Johnson Brick's filling of areas of the drainage barrier behind the masonry wall with mortar, which violates BIA Technical Note 7.

i.  Johnson Brick's failure to extend its through wall flashing to the exterior, which violates BIA Technical Note 7.

j.  Johnson Brick's failure to integrate its through wall flashing with the weather resistant barrier, which violates BIA Technical Note 7.

k.  Johnson Brick's failure to incorporate weep holes in its through wall flashing, which violates Construction Set Drawings Sheet A4.10 Detail 1, Construction Set Drawings Sheet A5.11 Detail 3, NCSBC § 1405.3.2, and BIA Technical Note 7.

l.  Johnson Brick's failure to seal utility penetrations, which violates NCBSC § 1405.3.

m. Johnson Brick's failure to install the masonry cap rowlock with the required 15-degree slope away from the building, which violates Construction Set Drawings Sheet A5.11 Detail 3.

## Wendell Siding Company, Inc.

37.     PC (defined as "Contractor") and Wendell (defined as "Subcontractor") entered into Master Subcontract Agreement No. MA-WEN-PCFB (the "**Wendell MSA**") for work to be performed by Wendell on the Project pursuant to Work Orders issued by PC to Wendell under the Wendell MSA. A true and accurate copy of the Wendell MSA is attached hereto as **Exhibit 5**.

38.     Wendell MSA § 1.1 states: "The Contract Documents consist of this Agreement, all of its Work Orders (defined below) and Exhibits, any and all addenda issued prior to execution of this Agreement, documents issued in the bid package, change orders issued after execution of this Agreement, the prime general contract between CONTRACTOR and Bragg Communities, LLC (the "Owner") … together with any and all applicable drawings, plans, specifications and addenda. All of the above Contract Documents form this Agreement and are fully incorporated herein. … Unless otherwise defined in an Exhibit, each capitalized term used in an Exhibit shall have the meaning given to such term in this Agreement."

39.     Wendell MSA § 2.1 states: "CONTRACTOR shall direct SUBCONTRACTOR to perform work through the issuance of written directives called Work Orders in the basic format prescribed in Exhibit A. The Work Orders shall specify the scope of work, Subcontract Time allowed for said work, Subcontract Price, and other requirements as set forth by CONTRACTOR. …"

40.     Under the Wendell MSA and within the Policy Period, PC and Wendell executed Work Order No. V-17E-07460 (the "**Wendell WO**") that included work on all five buildings in Randolph Pointe Phase 2. A true and accurate copy of the Wendell WO is attached hereto as **Exhibit 6**.

41.     Wendell WO Part II "Contract Documents" incorporates by reference the Construction Set Drawings.

Case 5:23-cv-00014-BO-RN    Document 1    Filed 01/11/23    Page 10 of 45

42.     The Wendell WO generally described Wendell's work as vinyl siding, gutters, and downspouts, but more particularly described Wendell's work in the scope of work attached to the Wendell WO.

43.     The Wendell's work on the Randolph Pointe Phase 2 portion of the Project failed to meet the requirements of the following (collectively, the "**Wendell Violations**"): (i) NCSBC; (ii) the Construction Set Drawings; (iii) industry standards; and/or (iv) manufacturer's instructions.

44.     The Wendell Violations include, but are not limited to, the following:

a.  Wendell's failure to seal its metal flashing at the transition between the siding and the masonry wall to the masonry rowlock, which violates Construction Set Drawings Sheet A5.11 Detail 3 and Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

b.  Gaps in Wendell's metal flashing at corners, which violates Construction Set Drawings Sheet A5.11 Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

c.  Wendell's pitching of its metal flashing at the transition between the siding and the masonry wall back towards the building, which violates Construction Set Drawings Sheet A5.11 Detail 3, NCSBC § 1403.2, and NCSBC § 1405.3.

d.  Wendell's failure to bend its masonry cap flashing so that the cap flashing sat flush on the pitched masonry rowlock and so as to pitch water away from the building, which violates Construction Set Drawings Sheet A5.11 Detail 3 and Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

e. Wendell's failure to properly integrate the breezeway flashing, weather resistant barrier, and vinyl, which violates Construction Set Drawings Sheet A5.11 Detail 3, NCSBC § 1404.2 and NCSBC § 1405.13.

f. The bulging, gaps, and openings in Wendell's vinyl siding, which violates NCSBC § 1405.13.

g. Wendell's failure to seal windows and doors to the masonry, which violates Construction Set Drawings Sheet A5.13 Detail 7, Detail 14, and Detail 16.

h. Wendell's failure to flash and/or seal penetrations such as vents, meters, and piping, which violates NCSBC § 1405.3 and Wendell's detailed scope of work requirements in the Wendell WO, including but not limited to paragraphs 12 and 18.

i. Wendell's sealing of window flanges with peel and stick tape at the sills, which violates Construction Set Drawings Sheet A5.13 Detail 1 and American Society of Testing and Materials ("ASTM") E2112.

j. The gaps and failures in Wendell's sealant, which violates NCSBC § 1405.3 and Wendell's detailed scope of work requirements in the Wendell WO, including but not limited to paragraphs 12 and 18.

### Zamarripa Brothers Framing, Inc.

45. PC (defined as "Contractor") and Zamarripa (defined as "Subcontractor") entered into Master Subcontract Agreement No. MA-ZAM-PCFB (the "**Zamarripa MSA**") for work to be performed by Zamarripa on the Project pursuant to Work Orders issued by PC to Zamarripa under the Zamarripa MSA. A true and accurate copy of the Zamarripa MSA is attached hereto as **Exhibit 7**.

46.     Zamarripa MSA § 1.1 states: "The Contract Documents consist of this Agreement, all of its Work Orders (defined below) and Exhibits, any and all addenda issued prior to the execution of this Agreement, documents issued in the bid package, change orders issued after execution of this Agreement, the prime general contract (the "Prime Contract") between CONTRACTOR and Bragg Communities, LLC (the "Owner") … together with any and all applicable drawings, plans, specifications and addenda. All of the above Contract Documents form this Agreement and are fully incorporated herein. … Unless otherwise defined in an Exhibit, each capitalized term used in an Exhibit shall have the meaning given to such term in this Agreement."

47.     Zamarripa MSA § 2.1 states: "CONTRACTOR shall direct SUBCONTRACTOR to perform work through the issuance of written directives called Work Orders in the basic format prescribed in Exhibit A. The Work Orders shall specify the scope of work, Subcontract Time allowed for said work, Subcontract Price, and other requirements as set forth by CONTRACTOR. …"

48.     Under the Zamarripa MSA and within the Policy Period, PC and Zamarripa executed Work Order No. V-17E-06101 (the "**Zamarripa WO**") that included work on all five buildings in Randolph Pointe Ph 2. A true and accurate copy of the Zamarripa WO is attached hereto as **Exhibit 8**.

49.     Zamarripa WO Part II "Contract Documents" incorporates by reference the Construction Set Drawings.

50.     The Zamarripa WO generally described Zamarripa's work as framing, carpentry, building wrap, door installation, and window installation, but more particularly described Zamarripa's work in the scope of work attached to the Zamarripa WO.

51.     The Zamarripa's work on the Randolph Pointe Phase 2 portion of the Project failed to meet the requirements of the following (collectively, the "**Zamarripa Violations**"): (i) NCSBC; (ii) the Construction Set Drawings; (iii) industry standards; and/or (iv) manufacturer's instructions.

52.     The Zamarripa Violations include, but are not limited to, the following:

a.  The gaps in Zamarripa metal cap flashing at the balcony tie-ins, which violates Construction Set Drawings Sheet A5.12 Detail 4, NCSBC § 1403.2, and NCSBC § 1405.3.

b.  The gaps in Zamarripa's metal cap flashing at balcony exterior corners, which violates Construction Set Drawings Sheet A5.12 Detail 4, NCSBC § 1403.2 and NCSBC § 1405.3.

c.  Zamarripa's failure to integrate its tie-in flashing with the metal masonry cap flashing and weather resistant barrier, which violates NCSBC § 1403.2, NCSBC § 1404.2, and NCSBC § 1405.3.

d.  Zamarripa's failure to properly lap and integrate its weather resistant barrier with flashings, which violates NCSBC § 1403.2, NCSBC § 1404.2, and Tyvek's, the manufacturer, installation instructions.

e.  The holes, tears, and gaps in Zamarripa's weather resistant barrier, which violates NCSBC § 1403.2, NCSBC § 1404.2, and Tyvek's, the manufacturer, installation instructions.

f.  Zamarripa's failure to property seal windows and doors to the masonry, which violates Construction Set Drawings Sheet A5.13 Detail 7, Detail 14, and Detail 16, Construction Set Drawings Sheet A5.14 Detail 1, and ASTM E2112.

g. Zamarripa's sealing of window flanges with peel and stick tape at the sills, which violates Construction Set Drawings Sheet A5.14 Detail 1 and ASTM E2112.

h. Zamarripa's installation of the windows onto the framing, which violates Zamarripa's detailed scope of work requirements in the Zamarripa WO, including, but not limited to, paragraphs 62-65.

i. The bowing of Zamarripa's windows out of plane, which violates Zamarripa's detailed scope of work requirements in the Zamarripa WO.

j. Zamarripa's failure to seal its weather resistant barrier around penetrations, which violates NCSBC § 1405.3 and Tyvek's, the manufacturer, installation instructions.

**Corporate Reorganization, Protectable Interest, and Damages**

53. PC participated in a corporate reorganization that included an overall name change from Picerne to Corvias.

54. In order to effectuate the overall name change from Picerne to Corvias, PC was merged into Corvias Military Construction, LLC ("**CMC**"), with CMC being the surviving limited liability company.

55. In the next phase of corporate reorganization, CMC was merged into CC, with CC being the surviving limited liability company.

56. As part of this reorganization, responsibility for the Johnson Brick MSA, Johnson Brick WO, Wendell MSA, Wendell WO, Zamarripa MSA, and Zamarripa WO (collectively the "**Subcontracts**") was transferred from PC to CC by virtue of the mergers and associated assignments.

57. As a result of this simple corporate reorganization, CC became a named insured under the SDI Policy.

58.    In the final phase, the Project contracts held by CC were transferred to CCP, including, but not limited to, the Subcontracts.

59.    CCP then assigned the Subcontracts to BC.

60.    Discovery of the defaults of performance under the Subcontracts giving rise to the loss and claims under the SDI Policy was made in 2020.

61.    The Johnson Brick Violations, Wendell Violations, and Zamarripa Violations are covered losses under the SDI Policy.

62.    Currently, the Plaintiffs have a real, tangible, and protectable interest in the SDI Policy and the indemnification benefits payable thereunder.

63.    A real and actual controversy exists between the Plaintiffs and Steadfast as to the amount and timing of the indemnification benefits payable under the SDI Policy. Plaintiffs have begun the repairs in Randolph Pointe, and have completed the repairs to one building and repaired the balcony areas in the other four buildings, for an expenditure to date of over $1,800,000.00. In addition, Plaintiffs have incurred legal and other professional expenses in excess of $300,000.00. Based on the repair work to date, Plaintiffs estimate that they will incur an additional $3,000,000.00 to complete the repairs to the remaining four (4) buildings in Randolph Pointe Phase 2, plus additional legal and other professional expenses.

64.    Plaintiffs submitted a Notice of Claim to Steadfast on or about September 11, 2020.

65.    Plaintiffs submitted an Interim Proof of Loss to Steadfast on or about October 23, 2020. Steadfast has not paid the Interim Proof of Loss.

66.    On December 14, 2020, the Plaintiffs filed a Complaint for Declaratory Judgment against Steadfast. On May 17, 2021, the Plaintiffs and Steadfast entered into a Tolling Agreement, pursuant to which the Plaintiffs filed a Notice of Dismissal Without Prejudice.

67.     In accordance with the Tolling Agreement, as amended by the parties, the Plaintiffs are refiling their Complaint for Declaratory Judgment.

68.     The Plaintiffs have satisfied all conditions precedent, or such conditions precedent have been waived, have complied with all applicable statutes of limitation and repose as modified by the Tolling Agreement, as amended by the parties, and paid all premiums owing with respect to the SDI policy, and Plaintiffs are therefore entitled to a declaratory judgment that Subguard Policy Number SGD 9374050-003 provides coverage for the loss and as to the amount of such loss as prayed for in this Complaint.

### COUNT 1
### DECLARATORY JUDGMENT FOR CORVIAS CONSTRUCTION, LLC
### AGAINST STEADFAST INSURANCE COMPANY
### REGARDING JOHNSON BRICK CONTRACTORS, INC.

69.     CC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-36 and Paragraphs 53-68.

70.     Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy.

71.     Together, the Johnson Brick MSA and Johnson Brick WO form a single and valid contract.

72.     The Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

73.     Johnson Brick failed to perform its Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

74.     Johnson Brick's Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO was defective.

75. Johnson Brick's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

76. The Johnson Brick Violations are a material breach of the Johnson Brick MSA and Johnson Brick WO.

77. Johnson Brick's defective Randolph Pointe Phase 2 work and material breach of the Johnson Brick MSA and Johnson Brick WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

78. As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

79. Because of the Johnson Brick Violations, CC has and will incur costs and expenses, including, but not limited to, correcting Johnson Brick's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Johnson Brick Violations. These costs and expenses are covered "Losses" under the SDI Policy.

80. As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, CC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

81. CC has been damaged by the Johnson Brick Violations and Johnson Brick's material breaches of the Johnson Brick MSA and Johnson Brick WO. The damages sought herein

include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

82.     CC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Johnson Brick's Randolph Pointe Phase 2 work.

83.     CC's interim "Proof of Loss" was submitted to Steadfast on or before the expiration of any statute of limitations or statute of repose applicable to recovery against the Johnson Brick MSA and Johnson Brick WO or to the Johnson Brick Violations, before the expiration of any right to seek recovery under the Johnson Brick MSA or Johnson Brick WO in connection with the Johnson Brick Violations, and before 10 years after the substantial completion of the Johnson Brick MSA and Johnson Brick WO.

84.     Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

85.     CC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a.  Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy;

b.  Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c.  The Johnson Brick Violations qualify as a "Default of performance" under the SDI Policy;

d.  The damages, costs, and expenses incurred and to be incurred by Corvias Construction, LLC are covered "Losses" that are recoverable under the SDI Policy;

e. Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f. Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g. Steadfast is obligated to indemnify Corvias Construction LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h. Such other and further relief as the Court deems appropriate.

<u>**COUNT 2**</u>
<u>**DECLARATORY JUDGMENT**</u>
<u>**FOR CORVIAS CONSTRUCTION PARTNERS, LLC**</u>
<u>**AGAINST STEADFAST INSURANCE COMPANY**</u>
<u>**REGARDING JOHNSON BRICK CONTRACTORS, INC.**</u>

86.    CCP hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-36 and Paragraphs 53-68.

87.    Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy.

88.    Together, the Johnson Brick MSA and Johnson Brick WO form a single and valid contract.

89.    The Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

90.    Johnson Brick failed to perform its Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

91.    Johnson Brick's Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO was defective.

92.     Johnson Brick's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

93.     The Johnson Brick Violations are a material breach of the Johnson Brick MSA and Johnson Brick WO.

94.     Johnson Brick's defective Randolph Pointe Phase 2 work and material breach of the Johnson Brick MSA and Johnson Brick WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

95.     As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

96.     Because of the Johnson Brick Violations, CCP has and will incur costs and expenses, including, but not limited to, correcting Johnson Brick's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Johnson Brick Violations. These costs and expenses are covered "Losses" under the SDI Policy.

97.     As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, CCP has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CCP has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

98.     CCP has been damaged by the Johnson Brick Violations and Johnson Brick's material breaches of the Johnson Brick MSA and Johnson Brick WO. The damages sought herein

include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

99.   CCP provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Johnson Brick's Randolph Pointe Phase 2 work.

100.   CCP's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Johnson Brick MSA and Johnson Brick WO or to the Johnson Brick Violations, before the expiration of any right to seek recovery under the Johnson Brick MSA or Johnson Brick WO in connection with the Johnson Brick Violations, and before 10 years after the substantial completion of the Johnson Brick MSA and Johnson Brick WO.

101.   Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

102.   CCP has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction Partners, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a.   Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy;

b.   Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c.   The Johnson Brick Violations qualify as a "Default of performance" under the SDI Policy;

d.  The damages, costs, and expenses incurred and to be incurred by Corvias Construction Partners, LLC are covered "Losses" that are recoverable under the SDI Policy;

e.  Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f.  Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Corvias Construction Partners LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

**COUNT 3**
**DECLARATORY JUDGMENT FOR BRAGG COMMUNITIES, LLC**
**AGAINST STEADFAST INSURANCE COMPANY**
**REGARDING JOHNSON BRICK CONTRACTORS, INC.**

103.    BC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-36 and Paragraphs 53-68.

104.    Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy.

105.    Together, the Johnson Brick MSA and Johnson Brick WO form a single and valid contract.

106.    The Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

107.    Johnson Brick failed to perform its Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

108. Johnson Brick's Randolph Pointe Phase 2 work under the Johnson Brick MSA and Johnson Brick WO was defective.

109. Johnson Brick's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

110. The Johnson Brick Violations are a material breach of the Johnson Brick MSA and Johnson Brick WO.

111. Johnson Brick's defective Randolph Pointe Phase 2 work and material breach of the Johnson Brick MSA and Johnson Brick WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

112. As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

113. Because of the Johnson Brick Violations, BC has and will incur costs and expenses, including, but not limited to, correcting Johnson Brick's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Johnson Brick Violations. These costs and expenses are covered "Losses" under the SDI Policy.

114. As a result of the Johnson Brick Violations and Johnson Brick's material breach of the Johnson Brick MSA and Johnson Brick WO, BC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, BC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

115.    BC has been damaged by the Johnson Brick Violations and Johnson Brick's material breaches of the Johnson Brick MSA and Johnson Brick WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

116.    BC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Johnson Brick's Randolph Pointe Phase 2 work.

117.    BC's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Johnson Brick MSA and Johnson Brick WO or to the Johnson Brick Violations, before the expiration of any right to seek recovery under the Johnson Brick MSA or Johnson Brick WO in connection with the Johnson Brick Violations, and before 10 years after the substantial completion of the Johnson Brick MSA and Johnson Brick WO.

118.    Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

119.    BC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Bragg Communities, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a.  Johnson Brick is a "Subcontractor/Supplier" under the SDI Policy;

b.  Johnson Brick MSA and Johnson Brick WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c.  The Johnson Brick Violations qualify as a "Default of performance" under the SDI Policy;

d.  The damages, costs, and expenses incurred and to be incurred by Bragg Communities, LLC are covered "Losses" that are recoverable under the SDI Policy;

e.  Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f.  Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Bragg Communities LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

**COUNT 4**
**DECLARATORY JUDGMENT FOR CORVIAS CONSTRUCTION, LLC**
**AGAINST STEADFAST INSURANCE COMPANY**
**REGARDING WENDELL SIDING COMPANY, INC.**

120.  CC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28, Paragraphs 37-44, and Paragraphs 53-68.

121.  Wendell is a "Subcontractor/Supplier" under the SDI Policy.

122.  Together, the Wendell MSA and Wendell WO form a single and valid contract.

123.  The Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

124.  Wendell failed to perform its Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

125.  Wendell's Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO was defective.

126. Wendell's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

127. The Wendell Violations are a material breach of the Wendell MSA and Wendell WO.

128. Wendell's defective Randolph Pointe Phase 2 work and material breach of the Wendell MSA and Wendell WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

129. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

130. Because of the Wendell Violations, CC has and will incur costs and expenses, including, but not limited to, correcting Wendell's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Wendell Violations. These costs and expenses are covered "Losses" under the SDI Policy.

131. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, CC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

132. CC has been damaged by the Wendell Violations and Wendell's material breaches of the Wendell MSA and Wendell WO. The damages sought herein include the costs to remove

and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

133.    CC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Wendell's Randolph Pointe Phase 2 work.

134.    CC's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Wendell MSA and Wendell WO or to the Wendell Violations, before the expiration of any right to seek recovery under the Wendell MSA or Wendell WO in connection with the Wendell Violations, and before 10 years after the substantial completion of the Wendell MSA and Wendell WO.

135.    Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

136.    CC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a.    Wendell is a "Subcontractor/Supplier" under the SDI Policy;

b.    Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c.    The Wendell Violations qualify as a "Default of performance" under the SDI Policy;

d.    The damages, costs, and expenses incurred and to be incurred by Corvias Construction, LLC are covered "Losses" that are recoverable under the SDI Policy;

e.  Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f.  Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Corvias Construction LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

### COUNT 5
### DECLARATORY JUDGMENT
### FOR CORVIAS CONSTRUCTION PARTNERS, LLC
### AGAINST STEADFAST INSURANCE COMPANY
### REGARDING WENDELL SIDING COMPANY, INC.

137.  CCP hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28, Paragraphs 37-44, and Paragraphs 53-68.

138.  Wendell is a "Subcontractor/Supplier" under the SDI Policy.

139.  Together, the Wendell MSA and Wendell WO form a single and valid contract.

140.  The Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

141.  Wendell failed to perform its Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

142.  Wendell's Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO was defective.

143.  Wendell's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

144. The Wendell Violations are a material breach of the Wendell MSA and Wendell WO.

145. Wendell's defective Randolph Pointe Phase 2 work and material breach of the Wendell MSA and Wendell WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

146. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

147. Because of the Wendell Violations, CCP has and will incur costs and expenses, including, but not limited to, correcting Wendell's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Wendell Violations. These costs and expenses are covered "Losses" under the SDI Policy.

148. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, CCP has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CCP has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

149. CCP has been damaged by the Wendell Violations and Wendell's material breaches of the Wendell MSA and Wendell WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

150. CCP provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Wendell's Randolph Pointe Phase 2 work.

151. CCP's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Wendell MSA and Wendell WO or to the Wendell Violations, before the expiration of any right to seek recovery under the Wendell MSA or Wendell WO in connection with the Wendell Violations, and before 10 years after the substantial completion of the Wendell MSA and Wendell WO.

152. Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

153. CCP has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction Partners, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a. Wendell is a "Subcontractor/Supplier" under the SDI Policy;

b. Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c. The Wendell Violations qualify as a "Default of performance" under the SDI Policy;

d. The damages, costs, and expenses incurred and to be incurred by Corvias Construction Partners, LLC are covered "Losses" that are recoverable under the SDI Policy;

e. Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f.  Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Corvias Construction Partners LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

## COUNT 6
## DECLARATORY JUDGMENT FOR BRAGG COMMUNITIES, LLC AGAINST STEADFAST INSURANCE COMPANY REGARDING WENDELL SIDING COMPANY, INC.

154. BC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28, Paragraphs 37-44, and Paragraphs 53-68.

155. Wendell is a "Subcontractor/Supplier" under the SDI Policy.

156. Together, the Wendell MSA and Wendell WO form a single and valid contract.

157. The Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

158. Wendell failed to perform its Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

159. Wendell's Randolph Pointe Phase 2 work under the Wendell MSA and Wendell WO was defective.

160. Wendell's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

161. The Wendell Violations are a material breach of the Wendell MSA and Wendell WO.

162. Wendell's defective Randolph Pointe Phase 2 work and material breach of the Wendell MSA and Wendell WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

163. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

164. Because of the Wendell Violations, BC has and will incur costs and expenses, including, but not limited to, correcting Wendell's Randolph Pointe Phase 2 work and legal and other professional expenses related to the Wendell Violations. These costs and expenses are covered "Losses" under the SDI Policy.

165. As a result of the Wendell Violations and Wendell's material breach of the Wendell MSA and Wendell WO, BC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, BC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

166. BC has been damaged by the Wendell Violations and Wendell's material breaches of the Wendell MSA and Wendell WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

167. BC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Wendell's Randolph Pointe Phase 2 work.

168. BC's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Wendell MSA and Wendell WO or to the Wendell Violations, before the expiration of any right to seek recovery under the Wendell MSA or Wendell WO in connection with the Wendell Violations, and before 10 years after the substantial completion of the Wendell MSA and Wendell WO.

169. Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

170. BC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Bragg Communities, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a. Wendell is a "Subcontractor/Supplier" under the SDI Policy;

b. Wendell MSA and Wendell WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c. The Wendell Violations qualify as a "Default of performance" under the SDI Policy;

d. The damages, costs, and expenses incurred and to be incurred by Bragg Communities, LLC are covered "Losses" that are recoverable under the SDI Policy;

e. Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f. Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

Case 5:23-cv-00014-BO-RN   Document 1   Filed 01/11/23   Page 34 of 45

g.  Steadfast is obligated to indemnify Bragg Communities LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

**COUNT 7**
**DECLARATORY JUDGMENT FOR CORVIAS CONSTRUCTION, LLC**
**AGAINST STEADFAST INSURANCE COMPANY**
**REGARDING ZAMARRIPA BROTHERS FRAMING, INC.**

171.  CC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28 and Paragraphs 45-68.

172.  Zamarripa is a "Subcontractor/Supplier" under the SDI Policy.

173.  Together, the Zamarripa MSA and Zamarripa WO form a single and valid contract.

174.  The Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

175.  Zamarripa failed to perform its Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

176.  Zamarripa's Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO was defective.

177.  Zamarripa's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

178.  The Zamarripa Violations are a material breach of the Zamarripa MSA and Zamarripa WO.

179.    Zamarripa's defective Randolph Pointe Phase 2 work and material breach of the Zamarripa MSA and Zamarripa WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

180.    As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

181.    Because of the Zamarripa Violations, CC has and will incur costs and expenses, including, but not limited to, correcting Zamarripa's Randolph Pointe Phase 2 work and legal and other professional expenses related to Zamarripa's defective Randolph Pointe Phase 2 work. These costs and expenses are covered "Losses" under the SDI Policy.

182.    As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, CC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

183.    CC has been damaged by the Zamarripa Violations and Zamarripa's material breaches of the Zamarripa MSA and Zamarripa WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

184.    CC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Zamarripa's Randolph Pointe Phase 2 work.

185. CC's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Zamarripa MSA and Zamarripa WO or to the Zamarripa Violations, before the expiration of any right to seek recovery under the Zamarripa MSA or Zamarripa WO in connection with the Zamarripa Violations, and before 10 years after the substantial completion of the Zamarripa MSA and Zamarripa WO.

186. Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

187. CC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

 a. Zamarripa is a "Subcontractor/Supplier" under the SDI Policy;

 b. Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

 c. The Zamarripa Violations qualify as a "Default of performance" under the SDI Policy;

 d. The damages, costs, and expenses incurred and to be incurred by Corvias Construction, LLC are covered "Losses" that are recoverable under the SDI Policy;

 e. Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

 f. Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g. Steadfast is obligated to indemnify Corvias Construction LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h. Such other and further relief as the Court deems appropriate.

**COUNT 8**
**DECLARATORY JUDGMENT**
**FOR CORVIAS CONSTRUCTION PARTNERS, LLC**
**AGAINST STEADFAST INSURANCE COMPANY**
**REGARDING ZAMARRIPA BROTHERS FRAMING, INC.**

188.    CCP hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28 and Paragraphs 45-68.

189.    Zamarripa is a "Subcontractor/Supplier" under the SDI Policy.

190.    Together, the Zamarripa MSA and Zamarripa WO form a single and valid contract.

191.    The Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

192.    Zamarripa failed to perform its Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

193.    Zamarripa's Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO was defective.

194.    Zamarripa's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

195.    The Zamarripa Violations are a material breach of the Zamarripa MSA and Zamarripa WO.

196. Zamarripa's defective Randolph Pointe Phase 2 work and material breach of the Zamarripa MSA and Zamarripa WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

197. As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

198. Because of the Zamarripa Violations, CCP has and will incur costs and expenses, including, but not limited to, correcting Zamarripa's Randolph Pointe Phase 2 work and legal and other professional expenses related to Zamarripa's defective Randolph Pointe Phase 2 work. These costs and expenses are covered "Losses" under the SDI Policy.

199. As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, CCP has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, CCP has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

200. CCP has been damaged by the Zamarripa Violations and Zamarripa's material breaches of the Zamarripa MSA and Zamarripa WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

201. CCP provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Zamarripa's Randolph Pointe Phase 2 work.

202. CCP's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Zamarripa MSA and Zamarripa WO or to the Zamarripa Violations, before the expiration of any right to seek recovery under the Zamarripa MSA or Zamarripa WO in connection with the Zamarripa Violations, and before 10 years after the substantial completion of the Zamarripa MSA and Zamarripa WO.

203. Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

204. CCP has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Corvias Construction Partners, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

    a.   Zamarripa is a "Subcontractor/Supplier" under the SDI Policy;

    b.   Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

    c.   The Zamarripa Violations qualify as a "Default of performance" under the SDI Policy;

    d.   The damages, costs, and expenses incurred and to be incurred by Corvias Construction Partners, LLC are covered "Losses" that are recoverable under the SDI Policy;

    e.   Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f.  Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Corvias Construction Partners LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

**COUNT 9**
**DECLARATORY JUDGMENT FOR BRAGG COMMUNITIES, LLC**
**AGAINST STEADFAST INSURANCE COMPANY**
**REGARDING ZAMARRIPA BROTHERS FRAMING, INC.**

205.    BC hereby realleges and incorporates by reference herein the allegations of Paragraphs 1-28 and Paragraphs 45-68.

206.    Zamarripa is a "Subcontractor/Supplier" under the SDI Policy.

207.    Together, the Zamarripa MSA and Zamarripa WO form a single and valid contract.

208.    The Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy, entered into during the Policy Period.

209.    Zamarripa failed to perform its Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO in a workmanlike manner so as to pass without objection in the trade and accordance with the Construction Set Drawings, the applicable North Carolina building code, industry standards, and/or manufacturer standards.

210.    Zamarripa's Randolph Pointe Phase 2 work under the Zamarripa MSA and Zamarripa WO was defective.

211.    Zamarripa's Randolph Pointe Phase 2 work occurred during the Policy Period of the SDI Policy.

212.    The Zamarripa Violations are a material breach of the Zamarripa MSA and Zamarripa WO.

213. Zamarripa's defective Randolph Pointe Phase 2 work and material breach of the Zamarripa MSA and Zamarripa WO is a "Default of performance" of a "Covered subcontract or purchase order agreement" during the Policy Period of the SDI Policy.

214. As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, the buildings in Randolph Point Phase 2 have been damaged, including water intrusion and resulting damage to interior and exterior building materials.

215. Because of the Zamarripa Violations, BC has and will incur costs and expenses, including, but not limited to, correcting Zamarripa's Randolph Pointe Phase 2 work and legal and other professional expenses related to Zamarripa's defective Randolph Pointe Phase 2 work. These costs and expenses are covered "Losses" under the SDI Policy.

216. As a result of the Zamarripa Violations and Zamarripa's material breach of the Zamarripa MSA and Zamarripa WO, BC has incurred and will incur significant damages to inspect and repair the damaged building materials. Further, BC has incurred and will incur significant damages in moving residents of the buildings in Randolph Point Phase 2 to permit the removal and repair or remediation of damaged building materials. These damages are covered "Losses" under the SDI Policy.

217. BC has been damaged by the Zamarripa Violations and Zamarripa's material breaches of the Zamarripa MSA and Zamarripa WO. The damages sought herein include the costs to remove and replace the building materials in the five buildings in Randolph Point Phase 2 that were damaged as a result.

218. BC provided Steadfast with written notice of its claim and an initial interim "Proof of Loss" under the SDI Policy related to Zamarripa's Randolph Pointe Phase 2 work.

219. BC's interim "Proof of Loss" was submitted to Steadfast before the expiration of any statute of limitations or statute of repose applicable to recovery against the Zamarripa MSA and Zamarripa WO or to the Zamarripa Violations, before the expiration of any right to seek recovery under the Zamarripa MSA or Zamarripa WO in connection with the Zamarripa Violations, and before 10 years after the substantial completion of the Zamarripa MSA and Zamarripa WO.

220. Steadfast has failed to pay the Interim Proof of Loss and has failed to acknowledge coverage for the "Losses" under the SDI Policy.

221. BC has satisfied all conditions precedent to its recovery under the SDI Policy, or such conditions precedent have been waived.

WHEREFORE, Bragg Communities, LLC, having set forth its allegations and claims, respectfully seeks a declaration by the Court that the:

a. Zamarripa is a "Subcontractor/Supplier" under the SDI Policy;

b. Zamarripa MSA and Zamarripa WO is a "Covered subcontract or purchase order agreement" under the SDI Policy;

c. The Zamarripa Violations qualify as a "Default of performance" under the SDI Policy;

d. The damages, costs, and expenses incurred and to be incurred by Bragg Communities, LLC are covered "Losses" that are recoverable under the SDI Policy;

e. Steadfast's failure to acknowledge coverage is a breach of Steadfast's obligations under the SDI Policy;

f. Steadfast's failure to pay the Interim Proof of Loss is a breach of Steadfast's obligations under the SDI Policy;

g.  Steadfast is obligated to indemnify Bragg Communities LLC for ongoing costs and expenses to complete the repairs as they are incurred; and

h.  Such other and further relief as the Court deems appropriate.

**COUNT 10**
**BREACH OF CONTRACT FOR CORVIAS CONSTRUCTION PARTNERS, LLC, CORVIAS CONSTRUCTION, LLC, AND BRAGG COMMUNITIES, LLC AGAINST STEADFAST INSURANCE COMPANY**

222.    CC, CCP and BC hereby reallege and incorporate by reference herein the allegations of Paragraphs 1-221.

223.    The SDI Policy is a contract.

224.    CC, CCP and BC have complied with all terms and conditions of the SDI Policy.

225.    Notwithstanding CC's, CCP's and BC's performance, Steadfast, in breach of the SDI Policy, has failed and refused to indemnify CC, CCP and BC with respect the Loss incurred by CC, CCP and BC.

226.    Steadfast's breach of the SDI Policy has caused CC, CCP and BC to incur damages in excess of $75,000.

WHEREFORE, Corvias Construction, LLC, Corvias Construction Partners, LLC and Bragg Communities, LLC, having set forth their allegations and claims, respectfully seek a judgment in their favor and against Steadfast Insurance Company awarding damages in their favor, including an award of attorneys' fees, costs and interest, and such other relief as the Court deems appropriate.

**Jury Demand**

Corvias Construction, LLC, Corvias Construction Partners, LLC, and Bragg Communities, LLC demand a trial by jury as to all issues so triable.

This the 11th day of January 2023.

**POYNER SPRUILL LLP**

By:    /s/ Thomas H. Davis, Jr.
Thomas H. Davis, Jr.
N.C. State Bar No. 7084
thdavis@poynerspruill.com
Benjamin T. Buskirk
N.C. State Bar No. 47619
bbuskirk@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-6400
Facsimile: (919) 783-1075

*Counsel for Plaintiffs*
*Corvias Construction, LLC,*
*Corvias Construction Partners, LLC,*
*and Bragg Communities, LLC*